UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | | |
|---|---|---|
| IN RE COMBINED WORLD TRADE CENTER AND LOWER MANHATTAN DISASTER SITE LITIGATION (straddler plaintiffs) | : : : | **21 MC 103 (AKH)** |

------------------------------------------------------------------x

EDGAR C. BAYAS,     :
    :
          Plaintiff(s),     :    **COMPLAINT**
    :
     - against-     :    Civil Action No. : 08 CV 01648
    :
TULLY CONSTRUCTION CO., INC., TULLY     :
ENVIRONMENTAL INC., TULLY INDUSTRIES, :
INC., TURNER CONSTRUCTION COMPANY,     :    Judge Hellerstein
BOVIS LEND LEASE, INC., BOVIS LEND     :
LEASE LMB, INC., AMEC CONSTRUCTION     :
MANAGEMENT, INC., BECHTEL ASSOCIATES :
PROFESSIONAL CORPORATION, BECHTEL     :
CONSTRUCTION, INC., BECHTEL     :
CORPORATION,  BECHTEL     :
ENVIRONMENTAL, INC., TRIBECA LANDING, :
L.L.C a/k/a TRIBECA POINTE, LLC, BANK OF :
NEW YORK TRUST COMPANY AMERICAS,     :
FGP 90 WEST STREET, INC., BROOKFIELD     :
FINANCIAL PROPERTIES, L.P., BLACKMON- :
MOORING- STEAMATIC CATASTOPHE, INC.     :
d/b/a BMS CAT, HILLMAN ENVIRONMENTAL :
GROUP, LLC, WFP RETAIL CO., L.P.,     :
AMERICAN EXPRESS COMPANY,     :    PLAINTIFF(S) DEMAND A
AMERICAN EXPRESS BANK, LTD, AMERICAN:    TRIAL BY JURY
EXPRESS TRAVEL RELATED SERVICES     :
COMPANY, INC., LEHMAN BROTHERS INC.,     :
LEHMAN COMMERICAL PAPER, INC.     :
LEHMAN BROTHERS HOLDING INC.,     :
BFP TOWER C CO. LLC, THAMES REALTY     :
CO., NEW YORK UNIVERSITY, BROOKFIELD :
FINANCIAL PROPERTIES, LP, WFP TOWER A :
CO., L.P.,     :
               Defendants.     :

------------------------------------------------------------------X

Plaintiff(s), Edgar C. Bayas, by his attorneys, OSHMAN & MIRISOLA, LLP,

complaining of defendants respectfully alleges:

Plaintiff, Edgar C. Bayas, a citizen of New York, residing at 40-41 Ithaca Street, 2nd Floor.

Elmhurst, New York 11373, brings this action against TULLY CONSTRUCTION CO., INC.,

TULLY ENVIRONMENTAL INC., TULLY INDUSTRIES, INC., TURNER CONSTRUCTION

COMPANY, BOVIS LEND LEASE, INC., BOVIS LEND LEASE LMB, INC., AMEC

CONSTRUCTION MANAGEMENT, INC., BECHTEL ASSOCIATES PROFESSIONAL

CORPORATION, BECHTEL CONSTRUCTION, INC., BECHTEL CORPORATION,

BECHTEL ENVIRONMENTAL, INC., TRIBECA LANDING, L.L.C a/k/a TRIBECA POINTE,

LLC, BANK OF NEW YORK TRUST COMPANY AMERICAS, TULLY CONSTRUCTION

CO., INC., TULLY  INDUSTRIES, INC., FGP 90 WEST STREET, INC.,  BROOKFIELD

FINANCIAL PROPERTIES, L.P.,    BLACKMON-MOORING- STEAMATIC

CATASTOPHE, INC. d/b/a BMS CAT, HILLMAN ENVIRONMENTAL GROUP, LLC, WFP

RETAIL        CO., L.P., AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS

BANK, LTD, AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,

LEHMAN BROTHERS INC.,  LEHMAN COMMERICAL PAPER, INC., LEHMAN

BROTHERS HOLDING INC., BFP TOWER C CO. LLC, THAMES REALTY CO. NEW

YORK UNIVERSITY, BROOKFIELD FINANCIAL PROPERTIES, LP, WFP TOWER A CO.,

L.P., seeking redress for injuries suffered in the past, and will continue to suffer, as a result of

participation in the vicinity of World Trade Center site in the aftermath of September 11, 2001.

## I. DEFINITIONS

The following definitions are employed for the purposes of this Complaint, and any

subsequent Complaints filed hereunder, unless otherwise specified:

1.        "Operations" includes cleaning, debris removal, carting, excavation and abatement of

hazardous substances performed in and/or around the World Trade Center site.

2.      "Work" includes all activities undertaken by Plaintiff as part of Plaintiff's operations at Plaintiff's work locations in and/or around the World Trade Center site.


3.      "Hazardous substances" include but are not limited to, substances that have toxic, carcinogenic, teratogenic, and mutagenic effects on bodily systems.  Hazardous substances present at Plaintiff's work locations were and are in the form of dust, fumes, particulate matter, vapors, gases, mists, fibers and liquids. The specific hazardous substances Plaintiff was exposed to include, but are not limited to, asbestos, fiberglass, crushed glass, silica, pulverized concrete, lead, mercury, cadmium, chromium, beryllium, iron, aluminum and other heavy metals, poly chlorinated biphenyls (PCBs), dioxin compounds, furons, Freon compounds, poly cyclical aromatic hydrocarbons (PAHs), benzene and other volatile organic compounds, arsenic, sulfur, acidic aerosols, and other toxic substances and hazardous decomposition by-products.

## II. INTRODUCTION

4.      Upon the collapse of the Twin Towers and Seven World Trade Center, known and unknown toxic substances were spread throughout the World Trade Center Site and the surrounding areas, portions of which, were owned, operated, maintained, controlled, supervised, and/or managed by the Defendant. Those areas remained dangerous, defective, hazardous, toxic, unguarded, unsupervised, and unprotected for multiple days, weeks, and/or months thereafter.  Plaintiff participated in debris removal and/or, hazardous substance abatement, and/or cleaning of buildings in the immediate vicinity of the World Trade Center Site **October 29, 2001 through on or about July 17, 2006**.

5.      The nature of this action is to recover money damages for the personal injuries sustained by the Plaintiff as a result of the carelessness, recklessness and negligence of Defendant in failing to provide the Plaintiff with a safe place to work in failing to provide the Plaintiff with proper, appropriate, and legally required respiratory protection, personal protective equipment, decontamination equipment and procedures, and training to prevent exposure to hazardous substances at plaintiff's work locations.

6.      Plaintiff also seeks recovery for the Defendant(s)' failure to provide appropriate respiratory protection and appropriate protective clothing and equipment, and to properly monitor air quality and to notify the Plaintiff of the dangerous levels of toxins and contaminants in the air at the Work locations. Plaintiff also seeks recovery for the Defendant(s)' failure to comply with one or more of the following: the World Trade Center Environmental Health and Safety Plan(s); the Labor Law of the State of New York; the New York State Industrial Code; the requirements of the Occupational Safety & Health Administration; and other applicable federal, state and local statutes, law, rules, regulations and ordinances.

## III. JURISDICTION

7.      The United States District Court for the Southern District of New York has original jurisdiction over the Plaintiff's claims pursuant to §408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001, 49 U.S.C. §40101 ("the Act").

## IV. VENUE

8.      Pursuant to the Act, venue is proper in this judicial district.

## V. PARTIES

### THE PLAINTIFF(S)

9.     Plaintiff participated in the clean up, debris removal, hazardous substance abatement, maintenance and/or repair work in vicinity of the World Trade Center Site at the locations identified in Paragraph 11 beginning on or about **October 29, 2001 through on or about July 17, 2006.**

10.    Beginning on or about October 29, 2001 through on or about July 17, 2006, upon information and belief, plaintiff was employed by The John Galt Corp., Abatement Intl/ Advatex Association Inc., Pinnacle Environmental Corp., PAL Environmental Safety, Kiss Construction Inc., ETS Contracting Inc., Safeway Environmental Corp., and union local 78 as a handler in work within and/or outside the following locations, collectively known as the "work locations":

**(a) 345 chambers Street, New York, New York beginning on or about the week ending August 13, 2002 through on or about the week ending September 3, 2002 with KISS Construction Inc.**

**(b) WTC- Path ground zero- Beginning on or about the week ending July 2, 2002 through on or about July 9, 2002 with Safeway Environmental Corp.**

**(c) 130 Liberty Street, New York, New York: With Safeway Environmental Corp: Beginning on or about the week ending June 17, 2002 for a total of about 36 hours and again beginning on or about the week ending June 25, 2002 for a total of about 24 hours.**

**With John Galt Corp: Beginning on or about July 10, 2006 through on or about July 17, 2006.**

**With PAL Environmental Safety: Beginning on or about the week ending June 28, 2002 for a total of about 16 hours.**

(d)  **90 West Street, New York, New York with Safeway Environmental Corp.:
Beginning on or about the week ending June 10, 2002 for a total of about 12
hours and again beginning on or about the week ending June 18, 2002 for a
total of about 36 hours.**

(e)  **Two World Financial Center, New York, New York with Pinnacle
Environmental Corp.: Beginning on or about the week ending on December 3,
2001 for a total of 28 hours and again beginning on or about the week ending
November 12, 2001 through on or about the week ending November 26, 2001.**

(f)  **Three World Financial Center, New York, New York with ETS Contracting
Inc.: Beginning on or about the week ending March 4, 2002 for a total of about
11.5 hours.**

(g)  **100 Trinity Place, New York, New York with KISS Construction, Inc.:
Beginning on or about the week ending February 25, 2002 for a total of about
11.5 hours.**

(h)  **One World Financial Center, New York, New York (200 Liberty Street, New
York, New York): With ETS Contracting Inc. Beginning on or about the week
ending May 13, 2002 for a total of about 8 hours.
With Abatement Intl/ Advatex: Beginning on or about the week ending
December 10, 2001 through on or about December 16, 2001 for a total of about
40 hours and again beginning on or about December 3, 2001 for a total of about
8 hours and again beginning on or about the week ending December 24, 2001
for a total of about 24 hours.
With PAL Environmental Corp.: Beginning on or about February 4, 2002 for a**

**total of 20 hours and again beginning on or about the week ending October 29,**

**2001 through on or about the week ending November 5, 2001 for a total of**

**about 40 hours.**

Other employer(s) and/or work location(s) may exist, but are presently unknown to

plaintiff.

11.    Plaintiff sustained serious physical illnesses and injuries as a result of exposure to

hazardous substances during plaintiff's work at the work locations.

12.    Plaintiff's injuries are as a result of exposure to hazardous substances at the work

locations which include, but are not limited to, the following:

**(a) Respiratory Injuries: allergic rhinitis and possible sinusitis**

**(b) Digestive Injuries: G.E.R.D.**

**(c) Cardiopulmonary Injuries: none presently known**

**(d) Cancer Injuries: none presently known**

**(e) Other Injuries: granuloma in right lung, red blood cells in urine which could**

**indicate an abnormal urinary tract or abnormality in kidneys, and low levels of**

**hemoglobin present in blood which could be suggestive of anemia, vitamin**

**deficiency, abnormal profuse bleeding, problem with the production of red blood**

**cells or an active infection or another process of inflammation.**

The foregoing is not an exhaustive list of injuries that may be alleged.

### THE DEFENDANT(S)

13.    At all times herein mentioned, Defendant owned the World Trade Center site and/or

surrounding premises.

14.    At all times herein mentioned, Defendant leased the World Trade Center site and/or

surrounding premises.

15.    At all times herein mentioned, Defendant maintained the World Trade Center site and/or surrounding premises.

16.    With reference to World Trade Center Path Zero, New York, New York, the Defendant TULLY CONSTRUCTION CO., INC.,  was owner and/or agent and/or contractor at the subject property and/pr in such relationship as the evidence may disclose.

17.    With reference to World Trade Center Path Zero, New York, New York the Defendant TULLY ENVIRONMENTAL INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

18.    With reference to World Trade Center Path Zero, New York, New York, the Defendant TULLY INDUSTRIES, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

19.    With reference to World Trade Center Path Zero, New York, New York, the Defendant TURNER CONSTRUCTION COMPANY, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

20.    With reference to World Trade Center Path Zero, New York, New York, the Defendant BOVIS LEND LEASE, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

21.    With reference to World Trade Center Path Zero, New York, New York, the Defendant BOVIS LEND LEASE LMB, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

22.    With reference to World Trade Center Path Ground Zero, New York, New York, the Defendant, AMEC CONSTRUCTION MANAGEMENT, INC., was owner and/or agent

and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

23.    With reference to World Trade Center Path Ground Zero, New York, New York, the Defendant, BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

24.    With reference to World Trade Center Path Ground Zero, New York, New York, the Defendant, BECHTEL CONSTRUCTION, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

25.    With reference to World Trade Center Path Ground Zero, New York, New York, the Defendant, BECHTEL CORPORATION, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

26.    With reference to World Trade Center Path Ground Zero, New York, New York the Defendant,  BECHTEL ENVIRONMENTAL, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

27.    With reference to 345 Chambers Street, New York, New York, the Defendant TRIBECA LANDING L.L.C. a/k/a Tribeca Pointe LLC was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

28.    With reference to 130 Liberty Street, New York, New York, the Defendant THE BANK OF NEW YORK TRUST COMPANY AMERICAS, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may

disclose.

29.    With reference to 130 Liberty Street, New York, New York TULLY CONTSRUCTION CO., INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

30.    With reference to 130 Liberty Street, New York, New York, the Defendant TULLY INDUSTRIES, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

31.    **With reference to 90 West Street, New York, New York, the Defendant** FGP 90 WEST STREET, INC, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

32.    **With reference to Two World Financial Center (225 Liberty Street, New York, New York), the Defendant** BROOKFIELD FINANCIAL PROPERTIES, L.P., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

33.    **With reference to Two World Financial Center (225 Liberty Street, New York, New York), the Defendant** BLACKMON-MOORING-STEAMATIC CATASTOPHE, INC. d/b/a  BMS CAT was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

34.    **With reference to Two World Financial Center (225 Liberty Street, New York, New York), the Defendant** HILLMAN ENVIRONMENTAL GROUP, LLC, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

35.    With reference to Three World Financial Center (200 Vesey Street, New York, New

York), the Defendant WFP RETAIL CO. L.P. was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

36.    With reference to Three World Financial Center (200 Vesey Street, New York, New York), the Defendant AMERICAN EXPRESS COMPANY was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

37.    With reference to Three World Financial Center (200 Vesey Street, New York, New York), the Defendant AMERICAN EXPRESS BANK, LTD, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

38.    With reference to Three World Financial Center (200 Vesey Street, New York, New York), the Defendant AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

39.    With reference to Three World Financial Center (200 Vesey Street, New York, New York),  the Defendant LEHMAN BROTHERS, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

40.    With reference to 200 Vesey Street, the Defendant LEHMAN COMMERCIAL PAPER, INC., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

41.    With reference to Three World Financial Center (200 Vesey Street, New York, New York), the Defendant LEHMAN BROTHERS HOLDINGS INC., was owner and/or agent

and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

42.     With reference to Three World Financial Center (200 Vesey Street, New York, New York), the Defendant BFP TOWER C CO. LLC, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

43.     With reference to 100 Trinity Place, New York, New York, the Defendant THAMES REALTY CO., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

44.     With reference to 100 Trinity Place, New York, New York, the Defendant NEW YORK UNIVERSITY, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

45.     With reference to One World Financial Center (200 Liberty Street, New York, New York), the Defendant BROOKFIELD FINANCIAL PROPERTIES, LP, was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

46.     With reference to One World Financial Center (200 Liberty Street, New York, New York, the Defendant WFP  TOWER A CO. L.P., was owner and/or agent and/or contractor at the subject property and/or in such relationship as the evidence may disclose.

47.     After September 11, 2001, the Defendant acted in its capacity as general contractor, and/or subcontractor, and/or construction manager responsible for the demolition, planning, reconstruction, renovation, debris removal, hazardous substance abatement and/or alteration performed at the World Trade Center site and/or surrounding premises.

48.    After September 11, 2001, Defendant(s) employed their own employees, construction

       companies, engineers, managers, contractors and subcontractors responsible for

       demolition, construction, renovation, alteration, and all work performed at their

       respective buildings.

## VI . GENERAL ALLEGATIONS

49.    This case arises out of injuries the Plaintiff sustained while working at the Work

       Location(s) in the aftermath of the terrorist attacks of September 11, 2001.

### General Conditions At World Trade Center Site

50.    Before September 11, 2001, the buildings at the WTC generated large amounts of

       hazardous waste, as defined by the Resource Conservation and Recovery Act (RCRA),

       producing over 10,000 pounds of hazardous waste per year. The buildings contained

       thousands of computers, fluorescent light fixtures, stored chemicals, underground and

       above ground storage tanks holding tons of diesel fuel and fuel oil, electrical transformers

       laden with PCB-containing oil, asbestos, and other hazardous substances.[1] Defendants

       knew that the collapse of these buildings would release these toxic substances, presenting

       a grave health risk to all who were exposed.

51.    Following the collapse of the World Trade Center buildings on September 11, 2001, there

       existed a dangerous, defective, hazardous, unguarded, unsupervised, unprotected, and

       unsafe toxic condition at the World Trade Center Site and work locations.

52.    The air and the area in, around, on, and at the World Trade Center Site, including the

       Plaintiff's work locations was polluted and contaminated with toxic hazardous

       substances.

53.    Workers were exposed to enormous quantities of toxic, carcinogenic, mutagenic, and teratogenic hazardous substances, generated by the collapse of the WTC buildings and smoldering fires that lasted more than three months, reaching temperatures as high as 1800 was and is a duly organized Fahrenheit.[2]

54.    The ongoing fires burning at the World Trade Center Site produced a mixture of toxic gases and ultra-fine particulates. Air samples taken from a rooftop one mile north of the World Trade Center Site showed "unprecedented ambient levels" of fine particulate matter, sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[3]

55.    The levels and types of human exposures resulting from this mixture of materials, dust, toxins, and a smoldering fire that lasted more than three months and reached temperatures as high as 1800 was and is a duly organized Fahrenheit was unprecedented.[4] Dust and vapors blanketed work site, as well as, the entire area surrounding the World Trade Center Site, including work locations. The ongoing fires burning at the World Trade Center Site produced a mixture of toxic gases and ultra-fine particulates that had never before been seen. Air samples taken from a rooftop one mile north of the World Trade Center Site showed "unprecedented ambient levels" of fine particulate matter,

---

[1]  See Burton Transcript., at pp. 49-51.

[2]  Paul J. Lioy, "Characterization of the Dust/Smoke Aerosol that Settled East of the World Trade Center in Lower Manhattan After the Collapse of the WTC 11 September, 2001, "Envtl. Health Perspectives 110(7):703-14 (July 2002), p. 703.

[3]  Thomas Cahill, et al., "Analysis of Aerosols from the World Trade Center Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies," New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[4]  Paul J. Lioy, "Characterization of the Dust/Smoke Aerosol that Settled East of the World Trade Center in Lower Manhattan After the Collapse of the WTC 11 September, 2001, "Envtl. Health Perspectives 110(7):703-14 (July 2002), p. 703.

sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[5]

56.     The Defendant, through its employees, representatives, agents, contractors, and other

        entities, knew that protection from hazardous substances was necessary at Plaintiff's work

        locations.[6]

57.     The official Report of the City Council Committee on Environmental Protection

        acknowledged: "In the weeks following the collapse of the Twin Towers, significant

        quantities of smoke, dust, asbestos, silica, dioxins, polychlorinated biphenyls (PCBs),

        lead, mercury, cadmium and other heavy metals, furans, volatile organic compounds,

        polycyclic aromatic hydrocarbons, benzene[7] and various other potentially hazardous

        substances were released into the air."[8]

1)      Upon information and belief, the Defendant knew that exposure to these harmful

        substances could cause a plethora of health problems for the WTC workers.

58.      Upon information and belief, the Defendant was aware that exposure to carbon

        monoxide could cause chronic angina and cardiac dysfunction.

---

[5] Thomas Cahill, et al., "Analysis of Aerosols from the World Trade Center Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies," New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[6] On September 21, 2001 and October 19, 2001, the City DOH, through the Commissioner of Health, issued two orders. These orders established controls on building use by City personnel and mandated specific protective actions be taken when persons and vehicles left the WTC Site: "It is hereby ordered that all persons leaving the WTC site shall follow personal hygiene protocols, including but not limited to...removal or HEPA vacuuming of work clothes...washed...SeeCITYCM3-00026317-18 and 00041996-97;  It is further ordered that all vehicles leaving the WTC site be spray City DOH Orders of 10/19/01 and 9/21/01. Notably, these protocols were NOT followed or enforced.

[7] See OSHA-NY00045060: "Air samples taken within the plume have contained high mixtures, at times, of compounds like benzene, which has been linked - for long term exposures - to anemia and leukemia."

[8] See CITY CM3-000025293: Air Quality and Environmental Impacts Due to the WTC Disaster, December 2001.

59.    Upon information and belief, the Defendant was aware that exposure to chromium metal and insoluble salts could cause chronic nasal septum perfection, liver and kidney damage, as well as cancer.

60.    Upon information and belief, the Defendant was aware that exposure to Crystalline Silica (as respirable dust) could cause progressive respiratory symptoms, silicosis and cancer.

61.    Upon information and belief, the Defendant was were aware that exposure to Freon (R-22) could cause cardiac arrhythmia, cardiac arrest and asphyxiation.

62.    Upon information and belief, the Defendant was aware that exposure to Lead (metallic and inorganic) is linked to decreases in muscle strength, abdominal pain, severe constipation, nausea, vomiting, paralysis of the wrist joint, kidney damage and nervous system disorders.

63.    Upon information and belief, the Defendant was aware that exposure to mercury compounds could cause pneumonitis, tremor and gastrointestinal distress.

64.    Upon information and belief, the Defendant was aware that exposure to PCBs could cause chemical acne, black heads, dark patches on skin, liver damage, digestive disturbances, impairment of the immune system and cancer.

65.    Information as to the hazardous conditions present at Plaintiff's work locations and the toxic exposures were never communicated to workers or to treating physicians.[9]

66.    From the time of the collapse of the buildings on September 11, 2001, and continuously thereafter, the Defendant was aware of the danger posed to Plaintiff and all others

---

[9]    See February 21, 2002 EPA National Ombudsman First Investigative Hearing on WTC Hazardous Waste Contamination. Experts and private citizens testified that the federal government, state government and city government had (1) not been operating in compliance with the laws of the United States, and (2) had been providing the public, firemen and police officers with erroneous information.

lawfully present at the work locations by exposure to toxins, hazardous substances,

particulate matter and contaminants in the air and on surfaces.

67.    The ongoing fires burning at the WTC Site produced a mixture of toxic gases, fumes,

vapors and ultra-fine particulates. Indeed, air samples taken from a rooftop one mile north

of the WTC Site demonstrated "unprecedented ambient levels" of fine particulate matter,

sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[10]

68.    Shortly after September 11, 2001, tests conducted by the United States Geological Survey

("USGS") determined that the dust at the WTC Site was highly caustic, with a

demonstrated capacity of burning tissue in the throat, eyes, and nasal passages. The dust

was determined to have a pH value of 9.0 to 11.0, indicating that the dust was highly

alkaline and comparable to ammonia. Some of the dust samples taken by the USGS on

September 17-18, 2001, registered higher than 11.0 on the pH scale—this level was as

caustic as liquid drain cleaners.[11]

69.    Days after September 11, 2001, the New York Environmental Law & Justice Project sent

dust samples from several lower Manhattan locations to two respected laboratories. One

such sample showed a 90% fiberglass content.[12] Fiberglass consists of glass fibers that

---

[10]    See Thomas Cahill, et al., "Analysis of Aerosols from the WTC Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies", New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[11]    See Clark, et al., "Environmental Studies of the WTC Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., et al., "Heath and Environmental Consequences of the WTC Disaster, "Envtl Health Perspectives 112(6):73139, 732 (May 2004), at p.16.

[12]    Juan Gonzalez, "Health Hazards in Air Worry Trade Center Workers," Daily News (September 28, 2001); Juan Gonzalez, Fallout., p. 6. The sample was taken at the corner of Church and Vesey Streets, at the northeast corner of the WTC Site.

are small enough to be inhaled and cause respiratory irritation in humans and fibrosis (a

scaring or thickening of tissues deep in the lung, impairing respiration) in animals. Glass

fibers are also highly irritating to the eyes.

70.    The New York City Department of Environmental Protection ("NYDEP") conducted

numerous tests that determined that the air and World Trade Center Site was

contaminated and polluted with the aforementioned toxic Dust. Shortly after September

11, 2001, tests conducted by the United States Geological Survey ("USGS") determined

that the dust at the World Trade Center Site was highly caustic and thus capable of

burning moist tissue in the throat, eyes, and nasal passage. This dust was determined to

have a pH value of 9.0 to 11.0, indicating that the dust was highly alkaline and

comparable to ammonia. Some of the dust samples taken by the USGS on September

17-18, 2001, registered higher than 11.0 on the pH scale—as caustic as liquid drain

cleaners.[13]

## Lack of Worker Safety

71.    The  Defendant, its employees, representatives, agents, and/or contractors failed to

provide Plaintiff with a safe and healthy work place, the required personal protective

equipment, including respiratory protection, chemical impervious clothing,

decontamination facilities, hazardous materials training, respiratory fit testing and proper

medical surveillance.

72.    The  Defendant, its employees, representatives, agents, and/or contractors failed to

---

[13]Roger Clark, et al., "Environmental Studies of the World Trade Center Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., et al., "Heath and Environmental Consequences of the World Trade Center Disaster, "Envtl Health Perspectives 112(6):73139, 732 (May 2004), at p.16.

perform the required atmospheric monitoring in and around the WTC site and Plaintiff's

work locations.  Any atmospheric monitoring performed by the Defendant was

inadequate to identify the true extent of the risk faced by the Plaintiff and to provide

adequate information from which to determine the proper protective measures and

equipment needed to adequately protect the health and safety of the Plaintiff.

73.    The Defendant, its employees, representatives, agents, and/or contractors on their own,

failed to implement and adopt the appropriate testing, sampling and monitoring methods,

protocols, and/or procedures that they were legally mandated to perform to properly

identify, characterize, and quantify the nature and concentration of hazardous substances

Plaintiff was exposed to at plaintiff's work locations.

74.    The Defendant, its employees, representatives, agents, and/or contractors on their own,

incorrectly tested samples and analyzed and evaluated atmospheric conditions by the use

of faulty tests.

75.    The analytical data, if properly evaluated, would have revealed that there were

dangerously high concentrations of total volatile organic compounds, including but not

limited to benzene, that far exceeded the protection limits provided by air purifying

cartridge respirators. These levels required, instead, supplied air and self-contained

breathing apparatus (SCBA).

76.    Benzene levels alone required the use of Level A or B personal protective equipment,

including self-contained breathing apparatus and respirator fit tests, as required by the

OSHA HAZWOPER standard, 29 CFR 1910.120.  Plaintiff should have been fully

encapsulated to prevent dermal exposures to hazardous substances. Accordingly, the

Plaintiff was not provided with timely or adequate warnings about the dangers that

existed at her Work locations.

77.    Plaintiff was not provided with or required to use personal protective equipment and/or other safety equipment necessary to provide adequate protection against the dangers at plaintiff's Work locations. Among other things:

    a.    Plaintiff was not provided with, or required to use, the necessary and legally mandated respiratory protection while working in and around the World Trade Center site and plaintiff's work locations;

    b.    Plaintiff received inadequate equipment that was entirely inappropriate and failed to protect the Plaintiff's health and safety and comply with relevant legal requirements. For example, the Plaintiff was not provided with or required to use supplied air systems or self contained breathing apparatus (SCBA), even when and where the atmospheric data, properly evaluated, revealed that there were dangerous levels and concentrations of total volatile organic compounds, including but not limited to benzene, that exceeded the legal permissible exposure levels, and that were far beyond the protection limits of any air purifying cartridge respirator;

    c.    Plaintiff was never provided with, or required to use any personal protective equipment that met the requirements of Level A or B protection, including self-contained breathing apparatus and respirator fit tests, as required by the OHSA HAZWOPER standard, 29 CFR 1910.102;

    d.    Plaintiff was never provided with or required to wear the legally mandated personal protective clothing that would prevent dermal exposures to the hazardous substances present at Plaintiff's work locations;

e.    Plaintiff was never provided with or required to wear the legally mandated eye protection to prevent injuries and/or absorption through the eye membrane of the hazardous substances present in Plaintiff's work locations;

f.    Plaintiff was never provided with or required the required decontamination facilities, equipment and training required to remove the hazardous substances that accumulated on their persons, clothing and personal possessions while working at plaintiff's work locations;

g.    Any safety equipment provided to Plaintiff by the Defendant, including but not limited to, personal protective equipment and respiratory protection, was not adequately selected, maintained, cleaned, and/or serviced. This included the failure to provide appropriate replacement cartridges for respirators when necessary.

1.    Any respiratory protective equipment the Defendant provided or recommended to Plaintiff was not properly fit tested or otherwise made suitable for use at the World Trade Center site. Among other things, Plaintiff did not receive the legally mandated quantitative and/or qualitative fit-testing and training as required by the Respiratory Protection Standard, 29 CFR 1910.134.

2.    Plaintiff was not provided with the legally mandated safety and health training to ensure plaintiff's safety at Plaintiff's work locations. Among other things:

a.    Plaintiff was never provided with or required to attend any HAZWOPER and/or chemical safety and health training before or while performing work at Plaintiff's work locations;

b.    Plaintiff was never provided with or required to attend any Hazard

Communication training before or while performing work at the World Trade Center site;

c.  Plaintiff was never provided with or required to attend any WTC site specific safety and health training before or while performing work at the Plaintiff's work locations;

d.  Plaintiff was never provided with or required to attend any personal protective equipment training before or while performing work at Plaintiff's work locations;

e.  Plaintiff was never provided with or required to attend any WTC site respiratory protection training before or while performing work at Plaintiff's work locations.

1.  The Defendant, its employees, representatives, agents, subcontractors and/or contractors on their own, failed to implement and enforce any and all required environmental and occupational safety and health laws, statutes, standards, regulations, rules and/or procedures, including, but not limited to, requirements for the use of personal protective equipment, respiratory protection and worker safety and health training.

2.  The Defendant, its employees, representatives, agents, and/or contractors on their own, failed to implement the proper engineering controls, pollution abatement measures, and other operational steps to prevent worker exposure to the myriad of hazardous substances present in the areas where Plaintiff worked and was lawfully present at plaintiff's work locations.

3.  The Defendant, its employees, representatives, agents, and/or contractors on their own, and in conjunction with other parties failed to adopt and implement the required medical surveillance programs for the hazardous substances to which Plaintiff was exposed.

**Plaintiff's Injuries**

4.    By reason of the foregoing, the Plaintiff was exposed to hazardous substances at plaintiff's work locations.

**Consequential Damages**

In consequence of said exposure, Plaintiff sustained severe and permanent personal injuries and/or disability; was rendered sick, sore, lame, and has been maimed and/or disabled; and/or will be permanently caused to suffer pain, suffering, inconvenience, and other effects of such injuries. In particular, plaintiff suffers from: **allergic rhinitis and possible sinusitis, G.E.R.D., granuloma in right lung, red blood cells in urine which could indicate an abnormal urinary tract or abnormality in kidneys, and low levels of hemoglobin present in blood which could be suggestive of anemia, vitamin deficiency, abnormal profuse bleeding, problem with the production of red blood cells or an active infection or another process of inflammation.**

**5.**    The foregoing is not an exhaustive list of injuries that may be alleged.

**6.**    In addition, Plaintiff incurred, and in the future will necessarily incur further, doctor, hospital, physical therapy, and/or medical expenses in an effort to diagnose and be cured of said injuries; have been unable to continue, engage in, and or attend to their usual vocations, and/or activities, and have suffered, and will necessarily suffer additional, loss of time and earnings from employment.

**Fear of Cancer**

7.    Plaintiff has a reasonable fear of developing cancer as a result of said exposure. With reasonable probability, the prospective, feared, and anticipated consequences may be expected to flow from the past harm.

8.    Plaintiff will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

9.    The degree of probability that the Plaintiff will develop cancers is such that there is a reasonable certainty that such cancers will develop at some future date, thus entitling Plaintiff to recover here for apprehended consequences that are not presently manifested.

10.    A rational basis exists between Plaintiff's exposure to the aforesaid dust, toxins, and contaminants, and Plaintiff's currently manifested fear of developing cancer in the future.

**Role of Defendant**

11.    On or about September 11, 2001, and continually thereafter, the Defendant, its employees, representatives, agents, and/or contractors were aware of the danger of exposure to dangerous substances, both known and unknown, in the air and dust at Plaintiff's Work locations. The Defendant had actual or constructive notice of the dangerous and defective conditions existing at the Work locations.  After September 11, 2001 the work locations were not reasonably safe.

12.    The Defendant was negligent in allowing the unsafe condition to exist without warning and this was a substantial factor in causing plaintiff's injuries.

13.    The Defendant knew of the unsafe conditions at Plaintiff's work locations long enough before Plaintiff's injuries developed to have permitted them, in the exercise of reasonable care, to have the unsafe conditions corrected and/or warned plaintiff and/or take other suitable precautions. The Defendant did not do so. To the extent that the Defendant did not know of hazardous conditions on site, in the exercise and use of reasonable care, they should have known of same, and taken steps to correct the conditions and/or warn plaintiff.

14.    As set forth below, however, Defendant failed to take adequate measures to inform the Plaintiff of that danger, to take adequate steps to abate or reduce that danger, or to ensure that Plaintiff was provided with the equipment, information, and training necessary for them to avoid or minimize that danger, in violation of their legal duties.

## Causes of Action

### A.  As and For A First Cause of Action: Pursuant to The New York State Labor Law

15.    Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this Complaint as if set forth more fully at length herein, and further allege the following.

16.     The Defendant, its employees, representatives, agents, and/or contractors had an obligation, in accordance with Section 200 of the Labor Law of the State of New York, to provide a reasonably safe place to work for persons lawfully performing work at Plaintiff's work locations. That duty arose from the Defendant's long term ownership, and/or management, and/or control, and/or leasehold, and/or operation, and/or supervision of the work locations, together with:

> (a) the Defendant's actual or constructive notice of the dangerous condition of the Plaintiff's work locations, as set forth above; and/or

> (b) the Defendant's control or supervision, and/or lack of supervision over some aspects of the work performed at the Plaintiff's work locations, as set forth above.

17.    The Defendant violated its duty under Section 200 of the Labor Law by failing to provide a reasonably safe place to work for persons lawfully performing work at their respective

buildings. Among other things, the Defendant failed to ensure:

a.    that the Plaintiff was notified of the dangerous substances in the

air, dust, and on the surfaces of their respective buildings;

b.    that the Plaintiff was provided adequate personal protective equipment, including,

but not limited to: protective clothing, masks, respirators, and goggles;

c.    that the Plaintiff was provided other necessary work equipment, safety devices,

and/or apparatus, as well as cleaning supplies and decontamination equipment;

d.    that adequate workplace safety rules were in place – including rules requiring the

use of personal protective equipment – were issued, enforced, and complied with;

e.    that there was adequate monitoring air quality of their respective buildings before,

during and after the commencement of the Plaintiff's work at the site was

performed;

f.    that atmospheric contamination was minimized or avoided;

g.    that effective engineering controls were implemented at their

respective buildings;

h.    that the conditions at their respective buildings and/or the Plaintiff's particular

work areas therein were subject to appropriate safety surveillance and/or

inspection;

i.    that the Plaintiff's exposure to dangerous substances, which The Defendant knew

or should have known would detrimentally affect the safety and/or health of

Plaintiff, was adequately monitored.

18.    As a result of the Defendant's violation of Section 200 of the Labor Law, the Plaintiff was

exposed to dangerous substances and suffered injuries, as set forth herein.

19.    The Plaintiff's injuries are the direct and proximate result of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of the Defendant, without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

20.    The  Defendant is liable for all of Plaintiff's damages, including, but not limited to Plaintiff's noneconomic loss, irrespective of the provisions of the CPLR §1601, because the Defendant acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries (see CPLR §1602(11)) and with reckless disregard for the safety of others (see CPLR §1602(7)).

### B. As and For a Second Cause of Action: Pursuant to Labor Law 241(6).

21.    Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this Complaint as if set forth more fully at length herein, and further allege the following.

22.    As owner, and/or manager, and/or controller, and/or leaseholder, and/or operator, and/or supervisor of the work locations in the immediate vicinity of the World Trade Center site, the Defendant, at all relevant times, had a non-delegable duty under Labor Law §241(6) of the State of New York, to ensure that all areas in which debris removal, construction, excavation and/or hazardous substance abatement was being performed were so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

23.    The Defendant violated its obligations under Section 241(6) of the Labor Law by failing to ensure that persons frequenting the premises or performing the Work at the work

locations were provided with a worksite that was so constructed, shored, equipped guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to such persons.

24.    The Defendant failed to comply with the applicable provisions and requirements of the New York State Industrial Code, including but not limited to §§ 23-1.5, 231.7, 23-1.8, 23-1.9, 23-1.25, 23-1.26, 23-2.1; Article 2, §27-a, Article 28, 12 NYCRR §820.4; General Municipal Law of the State of New York, §§205-e, 205-a; The Occupational Safety and Health Act, 29 U.S.C. §§ 654 et. Seq.; Occupational Safety and Health Administration, (OSHA) standards, including but not limited to, 29 C.F.R. §1910 Subparts H, I, J, K and Z, and specifically 29 C.F.R. §§1910.38, 1910.120, 1910.132-134; 1910.146; 1910.156; 1910.1001; 1910.1025; 1910.1027; 1910.1000, and 1910.1200, 29 C.F.R. §1926 Subparts C, D, E, F, G, H, I, J, and Z. and other applicable Federal, State, local, rules, regulations, ordinances and statutes.

25.    As a result of the Defendant's violation of Section 241(6) of the Labor Law, the Plaintiff was exposed to dangerous substances and suffered injuries, as set forth herein.

26.    The Plaintiff's injuries are the direct and proximate result of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of the Defendant, without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

27.    The  Defendant is for all of Plaintiff's damages, including, but not limited to Plaintiff's noneconomic loss, irrespective of the provisions of the CPLR §1601, because the Defendant(s):

    1)    violated a provision of Article 10 of the Labor Law, specifically Section 241(6)

(see CPLR 1602(8));

2)      owed the Plaintiff a non-delegable duty of care (see CPLR 1602(2)(iv));

3)      is vicariously liable for the negligent acts and omissions of any other and/or others who may have caused or contributed to the plaintiff's damages (see CPLR 1602(2)(iv));

4)      acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of plaintiff's injuries (see CPLR p1602(11)); and

5)      acted with reckless disregard for the safety of others (see CPLR 1602(7)).

### C. As and For a Third Cause of Action: Based Upon Common Law Negligence

28.      Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this Complaint as if set forth more fully at length herein, and further allege the following.

29.      Defendant owed Plaintiff a common law duty to provide a reasonably safe place to work for persons lawfully performing work at the work locations, as set forth herein.

30.      Defendant owed the Plaintiff a duty to exercise reasonable care in the actions it undertook at and relating to the Work locations. This included, among other things, providing information to the Plaintiff regarding the safety of the Work locations, including the level of dangerous substances in the air and on the site, and the level of risk arising from not properly using personal protective equipment, such as respirators.

31.      Defendant violated its common law duty of due care with respect to the Plaintiff in this case by acting with carelessness, negligence, gross negligence, wanton, and/or willful disregard for the safety and rights of the Plaintiff. Among other things, Defendant violated its duties through the acts and omissions set forth herein.

WHEREFORE, judgment is demanded against Defendant for compensatory damages, jointly and

severally with the other defendants in this case, in a sum to be determined by a jury.

### JURY TRIAL DEMAND

Plaintiff demands that all issues of fact in this case be tried to a properly empanelled jury.

Dated: New York, New York
      February 19, 2008

                                      OSHMAN & MIRISOLA, LLP
                                      Attorneys for Plaintiff


                                      By: /s/ David L. Kremen_____
                                      David L. Kremen (DK 6877)
                                      42 Broadway, 10th Floor
                                      New York, New York 10004
                                      (212) 233-2100

**Defendant(s)' addresses:**
TULLY CONSTRUCTION CO., INC.
 127-50 Northern Blvd.
Queens, NY 11368

TULLY ENVIRONMENTAL INC.
127-50 Northern Blvd.
Queens, NY 11368

TULLY INDUSTRIES, INC.
127-50 Northern Blvd.
Queens, NY 11368

TURNER CONSTRUCTION COMPANY
375 HUDSON ST.
NEW YORK, NEW YORK, 10014

BOVIS LEND LEASE, INC.
200 PARK AVE, 9TH FLR
NEW YORK, NEW YORK, 10166

BOVIS LEND LEASE LMB, INC.
200 PARK AVE, 9TH FLR
NEW YORK, NEW YORK, 10166

AMEC CONSTRUCTION MANAGEMENT, INC.
2200 FLETCHER AVENUE / 6TH FL
FORT LEE, NEW JERSEY, 07024

BECHTEL ASSOCIATES PROFESSIONAL CORPORATION
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

BECHTEL CONSTRUCTION, INC.
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

BECHTEL CORPORATION
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

BECHTEL ENVIRONMENTAL, INC.
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

TRIBECA LANDING, L.L.C a/k/a TRIBECA POINTE, LLC
Address unknown

BANK OF NEW YORK TRUST COMPANY AMERICAS
One Wall Street,
New York, New York 10286

FGP 90 WEST STREET, INC.,
90 West Street,
New York, New York 10006

BROOKFIELD FINANCIAL PROPERTIES, L.P.
3 World Financial Center
New York, NY 10281

BLACKMON-MOORING- STEAMATIC CATASTOPHE, INC. d/b/a BMS CAT
303 Arthur Street
Fort Worth, TX 76107

HILLMAN ENVIRONMENTAL GROUP, LLC
1600 Route 22 E.
Union, New Jersey 07083

WFP RETAIL  CO., L.P.
One Liberty Plaza,
New York, New York 10016

AMERICAN EXPRESS COMPANY
Three World Financial Center,
New York, New York 10281

AMERICAN EXPRESS BANK, LTD.
Three World Financial Center
New York, New York 10281

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.
Three World Financial Center
New York, New York 10281

LEHMAN BROTHERS INC.,
745 7th Avenue,
New York, New York 10019

LEHMAN COMMERICAL PAPER, INC.
745 7th Avenue,
New York, New York 10019

LEHMAN BROTHERS HOLDING INC.
745 7th Avenue,
New York, New York 10019

BFP TOWER C CO. LLC,
3 World Financial Center
New York, NY 10281k

THAMES REALTY CO.
1350 Broadway
New York, NY 10018

NEW YORK UNIVERSITY,
25 West Fourth Street
New York, New York 10004

BROOKFIELD FINANCIAL PROPERTIES, LP
3 World Financial Center
New York, NY 10281

WFP TOWER A CO., L.P.
3 World Financial Center
New York, NY 10281